UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

WAYNE BARNES,

                              Plaintiff,

                                                              9:04-CV-1269
v.                                                            (NAM/GHL)

LT. CRAFT; SGT. J. O'KEEFE; C.O. C. HODGES;
and G. GOORD, Commissioner of the New York
State Department of Correctional Services,

                              Defendants.
_____

APPEARANCES:                                  OF COUNSEL:

WAYNE BARNES, 03-A-2258
  Plaintiff, *Pro Se*
Wyoming Correctional Facility
P.O. Box 501
Attica, NY 14011

HON. ANDREW M. CUOMO                          MICHAEL G. McCARTIN, ESQ.
Attorney General of the State of New York     Assistant Attorney General
  Counsel for Defendants
The Capitol
Albany, NY 12224

GEORGE H. LOWE, United States Magistrate Judge

## <u>REPORT-RECOMMENDATION</u>

       This action has been referred to me for Report and Recommendation by the Honorable

Norman A. Mordue, Chief United States District Judge, pursuant to Local Rule 72.3(c) and 28

U.S.C. § 636(b).  Wayne Barnes ("Plaintiff"), an inmate at Wyoming Correctional Facility

("Wyoming C.F."), commenced this *pro se* civil rights action against four employees of the New

York State Department of Correctional Services ("Defendants"), pursuant to 42 U.S.C. § 1983.

(Dkt. No. 9 [Plf.'s Am. Compl.].)  Generally, Plaintiff's Amended Complaint alleges that

Defendants violated his rights under the First, Eighth and Fourteenth Amendments by confining

him to the Special Housing Unit ("S.H.U.") at Ulster Correctional Facility ("Ulster C.F.")

between March 12, 2004, and March 17, 2004, without providing him a hearing, in response to

his refusal to shave his full beard, for which he claims he possessed, at the time, a valid permit

from the New York State Department of Correctional Services ("DOCS") due to his need to

maintain the beard in order to engage in Rastafarian spiritual practices.  (*Id*.)  Currently pending

before the Court is Defendants' motion to dismiss for failure to state a claim pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure.  (Dkt. No. 19.)  For the reasons that follow, I

recommend that Defendants' motion be granted in part and denied in part.

## I.      BACKGROUND

### A.      Plaintiff's Amended Complaint

Because of Plaintiff's special status as a *pro se* civil rights litigant, I construe the

allegations of his Amended Complaint in light of the factual assertions contained in materials

outside his Amended Complaint (e.g., in his Memorandum of Law submitted in opposition to

Defendants' motion to dismiss) to the extent that those factual assertions are consistent with the

allegations of Plaintiff's Amended Complaint.[1]  Liberally construed, Plaintiff's Amended

---

[1]      "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss.  However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum."  *Gadson v. Goord,* 96-CV-7544, 1997 WL 714878, at *1, n. 2 (S.D.N.Y. Nov. 17, 1997) (citing, *inter alia*, *Gil v. Mooney*, 824 F.2d 192, 195 [2d Cir. 1987] [considering plaintiff's response affidavit on motion to dismiss]).  Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.'"  *Donhauser v. Goord*, 314 F. Supp.2d 119, 212 (N.D.N.Y. 2004) (considering

Complaint asserts the following factual allegations.

In late 2003, while Plaintiff was incarcerated in the New York State Department of

Correctional Services ("DOCS"), he was "passing through" Ulster Correctional Facility ("Ulster

C.F."), wearing a full beard.[2]  C.O. Hodes[3] stopped Plaintiff and ordered him to shave his beard.[4]

Plaintiff informed C.O. Hodes that he had received a written permit from DOCS exempting him

from DOCS' rule that beards may be no more than one inch in length (hereinafter "DOCS' one-

inch beard rule").[5]  C.O. Hodes called Wyoming C.F. (the correctional facility at which Plaintiff

was regularly housed, and which was responsible for maintaining Plaintiff's records at the time),

and was informed that Plaintiff indeed had such a written exemption on file.[6]  As a result, C.O.

---

factual allegations contained in plaintiff's opposition papers) (citations omitted), *vacated in part on other grounds*, 317 F. Supp.2d 160 (N.D.N.Y. 2004).  This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading–which a motion to dismiss is not.  *See Washington v. James*, 782 F.2d 1134, 1138-39 (2d Cir. 1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) (citations omitted).

[2]     (Dkt. No. 9, ¶ 7(a) [Plf.'s Am. Compl.].)

[3]     I note that, although Plaintiff's Amended Complaint refers to this individual as "C.O. C. Hodges" (Dkt. No. 9), Defendants have identified this individual as "C.O. Hodes" (Dkt. No. 19, Part 2 at 1 [Defs.' Mem. of Law]), and Plaintiff has requested that the Court amend his Amended Complaint accordingly "if it is necessary" (Dkt. No. 22 at 10 [Plf.'s Opp. Mem. of Law]).  While I find that it is not necessary to formally amend Plaintiff's Amended Complaint, I will liberally construe Plaintiff's Amended Complaint as asserting various allegations against "C.O. Hodes" and not "C.O. Hodges," in light of Plaintiff's request.

[4]     (Dkt. No. 9, ¶ 7(a) [Plf.'s Am. Compl.].)

[5]     (Dkt. No. 9, ¶ 7(a) [Plf.'s Am. Compl.].)

[6]     (Dkt. No. 9, ¶ 7(a) [Plf.'s Am. Compl.].)

Hodes permitted Plaintiff to pass through Ulster C.F. without having to shave his beard.[7]

Then, during the afternoon of March 12, 2004, while again passing through Ulster C.F., Plaintiff was again stopped by C.O. Hodes and ordered to shave his beard.[8]  Plaintiff asked C.O. Hodes whether he did not remember Plaintiff from the previous time he had passed through Ulster C.F.[9]  Plaintiff explained that he was the inmate who had received a written exemption from DOCS' one-inch beard rule.[10]  C.O. Hodes responded that, at Ulster C.F., a permit does not matter and that if Plaintiff did not cut his beard he would have to go to the "box" until he cut it.[11]  Despite having been given a copy of the written exemption (by an unidentified person at an unidentified point in time), and knowing that Plaintiff was exempt from DOCS' one-inch beard rule regarding beards, C.O. Hodes sought to incarcerate Plaintiff in the "box" at Ulster C.F.[12]

Toward this end, C.O. Hodes called Sgt. O'Keefe and informed him that Plaintiff was refusing to cut his beard and claiming that he had an exemption on file due to the fact that he was a "practicing and registered Rastafarian."[13]  Plaintiff informed Sgt. O'Keefe that previously, when Plaintiff had been at Ulster. C.F., it had been learned by C.O. Hodes that Plaintiff did

---

[7]      (Dkt. No. 9, ¶ 7(a) [Plf.'s Am. Compl.].)

[8]      (Dkt. No. 9, ¶ 7(a) & Exs. 1, 2 [Plf.'s Am. Compl., attaching "Administrative Segregation Recommendation" dated 3/12/04, and complaint letter from Plaintiff dated 4/13/04].)

[9]      (Dkt. No. 9, ¶ 7(a) [Plf.'s Am. Compl.].)

[10]      (Dkt. No. 9, ¶ 7(a) [Plf.'s Am. Compl.].)

[11]      (Dkt. No. 9, ¶ 7(a) [Plf.'s Am. Compl.].)

[12]      (Dkt. No. 9, ¶ 7(a) [Plf.'s Am. Compl.].)

[13]      (Dkt. No. 9, ¶ 7(b) & Ex. 2 [Plf.'s Am. Compl., attaching complaint letter from Plaintiff dated 4/13/04].)

indeed have an exemption on file.[14]  Plaintiff also informed Sgt. O'Keefe that the Ulster C.F.

"Intake Draft" has a copy of the permit from DOCS in Albany, New York.[15]  Sgt. O'Keefe

responded that, at Ulster C.F., a permit from Albany holds no weight and that if Plaintiff

continued to refuse to cut his beard he would be sent to Ulster C.F.'s Special Housing Unit

("S.H.U.") until he cut his beard, regardless of any such permit.[16]

At approximately 3:40 p.m. on March 12, 2004, Sgt. O'Keefe signed an "Administrative

Segregation Recommendation," stating that the reason for the recommendation was that

"[Plaintiff] refused to shave his beard to one inch during the incoming draft process.  [Plaintiff]

claims he has an exemption on file."[17]  At some point, Lt. Craft signed the "Administrative

Segregation Recommendation," authorizing Plaintiff's confinement in S.H.U. pending a

determination of the recommendation.[18]  The bottom of the "Administrative Segregation

Recommendation" form states as follows:

> **Notice to Inmate:** A hearing will be conducted within 14 days of this
> recommendation in accordance with the provisions of Part 254 of
> Chapter V.  You will be entitled to call witnesses on your own behalf,
> provided that doing so does not jeopardize institutional safety or
> correctional goals.

---

[14]    (Dkt. No. 9, ¶ 7(b) [Plf.'s Am. Compl.].)

[15]    (Dkt. No. 9, ¶ 7(a), (b) [Plf.'s Am. Compl.].)

[16]    (Dkt. No. 9, ¶ 7(b) [Plf.'s Am. Compl.].)

[17]    (Dkt. No. 9, Ex. 1 [Plf.'s Am. Compl., attaching "Administrative Segregation
Recommendation" dated 3/12/04].)

[18]    (Dkt. No. 9, ¶ 7(c) & Ex. 1 [Plf.'s Am. Compl., attaching "Administrative
Segregation Recommendation" dated 3/12/04].)

5

> If restricted pending a hearing on this recommendation, you may write to the Deputy Superintendent for Security or his/her designee prior to the hearing to make a statement on the need for continued confinement.[19]

Between March 12, 2004, and March 17, 2004, Plaintiff remained in the Ulster C.F. S.H.U., during which time he was subjected to the following restrictive conditions, among others: a strip search, continuous confinement in his cell, continuous isolation from the general prison population, continuous denial of use of prison facilities (such as the libraries, gym, etc.), and sleep deprivation due to the 24-hour lighting in his cell and the loud noise of the air-conditioning system above his cell.[20]

On March 17, 2004, Plaintiff sent a letter of complaint to an unidentified person at Ulster C.F., complaining about the harsh conditions to which he was being subjected in S.H.U.[21] Plaintiff alleges that he sent this letter to "the hearing officer" (or perhaps to an unspecified

---

[19]     (Dkt. No. 9, Ex. 1 [Plf.'s Am. Compl., attaching "Administrative Segregation Recommendation" dated 3/12/04].)

[20]     (Dkt. No. 9, ¶ 5 & Exs. 2, 4 [Plf.'s Am. Compl., attaching complaint letter from Plaintiff dated 4/13/04, and a letter from Plaintiff dated 5/23/04]; *see also* Dkt. No. 22 at 3 [Plf.'s Opp. Mem. of Law, asserting the allegation regarding being strip searched].)

[21]     (Dkt. No. 9, Ex. 4 [Plf.'s Am. Compl., attaching letter from Plaintiff dated 5/23/04].)  I note that Plaintiff does not attach to his Amended Complaint or opposition papers a copy of this March 17, 2004, letter.

lieutenant),[22] although he acknowledges that no hearing had yet been held.[23]  Plaintiff never

received a response to his letter.[24]  However, on or about March 17, 2004, Plaintiff was released

from S.H.U. and returned to Wyoming C.F.[25]  No hearing was ever held.[26]

On April 13, 2004, Plaintiff sent a grievance to the Ulster C.F. Inmate Grievance

Committee, complaining about the events of March 12, 2004.[27]  On April 21, 2004, the Inmate

Grievance Supervisor at Upstate C.F. sent Plaintiff a response to his letter of April 13, 2004.  The

Inmate Grievance Supervisor's letter stated as follows:

---

[22]      (Dkt. No. 9, Exs. 4, 6 [Plf.'s Am. Compl., attaching letter from Plaintiff dated
5/23/04 alleging that he sent the 4/17/04 letter to "the hearing officer (Lt./etc.)" and letter from
Plaintiff dated 6/16/04 alleging that he sent the 4/17/04 letter to "the 'hearing officer'"]; Dkt. No.
22 at 3, 8 [Plf.'s Opp. Mem. of Law, alleging that he sent the letter to the "Hearing Officer /
Lieutenant"].)

[23]      (Dkt. No. 9, Ex. 4 [Plf.'s Am. Compl., attaching letter from Plaintiff dated
5/23/04 alleging that he sent the 4/17/04 letter "prior to a hearing"]; Dkt. No. 22 at 3 [Plf.'s Opp.
Mem. of Law, alleging that he sent the letter before he had seen any "action or redress from the
authorities"].)

[24]      (Dkt. No. 9, Exs. 4, 6 [Plf.'s Am. Compl., attaching letter from Plaintiff dated
5/23/04 stating *inter alia* "I have yet to have . . . a response from the hearing officer regarding
this issue," and letter from Plaintiff dated 6/16/04 stating *inter alia* "I have never gotten a
response from the hearing officer"].)

[25]      (Dkt. No. 9, Exs. 2, 4, 6 [Plf.'s Am. Compl., attaching complaint letter from
Plaintiff dated 4/13/04, letter from Plaintiff dated 5/23/04, and letter from Plaintiff dated
6/16/04].)

[26]      (Dkt. No. 9, ¶¶ 5, 7(c) & Ex. 4 [Plf.'s Am. Compl., attaching letter from Plaintiff
dated 5/23/04].)

[27]      (Dkt. No. 9, ¶ 5 & Ex. 2 [Plf.'s Am. Compl., attaching complaint letter from
Plaintiff dated 4/13/04].)

> This letter is to inform you that your letter of complaint dated April 13, 2004 cannot be processed as a grievance.  Your letter describes an incident that allegedly took place March 12, 2004.  Thirty-nine calendar days have passed from the alleged incident to the reception of your letter received April 20, 2004.
>
> Per Directive 4040 V-A subsection 2: Complaint [sic] must be submitted within fourteen days of the alleged occurrence. (see enclosed)
>
> However, your letter of complaint is being investigated by the Superintendent of the facility, Mr. James J. O'Connell.  You will receive a response from him regarding your letter.[28]

On May 23, 2004, Plaintiff sent a letter to the Inmate Grievance Supervisor at Upstate C.F.[29]  In pertinent part, that letter stated that (1) Plaintiff had taken so long to respond to the Inmate Grievance Supervisor's letter since Plaintiff had received that letter only the week before, (2) Plaintiff's complaint letter of April 13, 2004 should not have been deemed to be thirty-nine days late but only thirty-one days late, since Plaintiff submitted it to prison authorities for mailing on April 13, 2004, and (3) Plaintiff had initially sent a letter of complaint to a "hearing officer" at Ulster C.F. on or about March 17, 2004, but had never received a response.[30]

---

[28]     (Dkt. No. 9, Ex. 3 [Plf.'s Am. Compl., attaching letter from Ulster C.F. Inmate Grievance Supervisor dated 4/21/04].)

[29]     (Dkt. No. 9, Ex. 4 [Plf.'s Am. Compl., attaching letter from Plaintiff dated 5/23/04].)

[30]     (Dkt. No. 9, Ex. 4 [Plf.'s Am. Compl., attaching letter from Plaintiff dated 5/23/04].)

On June 1, 2004, Plaintiff filed a grievance at Wyoming C.F. regarding the events of March 12, 2004, at Ulster C.F.[31]  The Inmate Grievance Program at Wyoming C.F. informed Plaintiff that there was nothing it could do.[32]

On June 16, 2004, Plaintiff sent a complaint letter to the "Deputy / Assistant Superintendent of Security" at Ulster C.F. regarding the events of March 12, 2004.  Plaintiff does not indicate what response, if any, he received regarding that letter.

Although Plaintiff's Amended Complaint references only the First Amendment, I liberally construe that pleading as attempting to raise an inadequate prison-conditions claim under the Eighth Amendment, and a due process claim under the Fourteenth Amendment, given his special status as a *pro se* civil rights litigant,[33] and given various of the statements made in his Amended Complaint and documents attached to that pleading.[34]

---

[31]    (Dkt. No. 9, ¶ 5 & Ex. 5 [Plf.'s Am. Compl., attaching grievance dated 6/1/04].)

[32]    (Dkt. No. 9, ¶ 5 [Plf.'s Am. Compl.].)

[33]    *See Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005) (when district court is determining what legal claims a *pro se* civil litigant has raised, "the court's imagination should be limited only by [the plaintiff's] factual allegations, not be the legal claims set out in his pleadings") [citations omitted].

[34]    (*See, e.g.*, Dkt. No. 9, ¶ 5 & Ex. 4 [Plf.'s Am. Compl., attaching his letter dated 5/23/04, complaining that there was "no hearing" with regard to his confined in the Ulster C.F. S.H.U.]; Dkt. No. 9, Exs. 2 & 4 [Plf.'s Am. Compl., attaching his letters dated 4/13/04 and 5/23/04, complaining about the allegedly "harsh," "degrading" and "inhumane" conditions in the Ulster C.F. S.H.U.].)

**B.     Defendants' Motion to Dismiss**

Defendants have moved to dismiss Plaintiff's Amended Complaint on two grounds. First, Defendants argue that Plaintiff's claims against Defendant Goord should be dismissed because Plaintiff has failed to allege facts indicating that Defendant Goord was personally involved in the constitutional violations alleged.  (Dkt. No. 19, Part 2 at 3-4 [Defs.' Mem. of Law].)  Second, Defendants argue that Plaintiff's claims against all Defendants should be dismissed because Plaintiff has failed to allege facts indicating that he exhausted his administrative remedies prior to filing this action.  (Dkt. No. 19, Part 2 at 4-7 [Defs.' Mem. of Law].)

Plaintiff has opposed Defendants' motion.  In response to Defendants' first argument, Plaintiff argues that Defendant Goord was personally involved in the constitutional violations alleged due to the fact that, as the Commissioner of DOCS, he was responsible for its rules and the practices of its employees.  (Dkt. No. 22 at 7 [Plf.'s Opp. Mem. of Law].)  In response to Defendants' second argument, Plaintiff argues that (1) Defendants have not met their burden of showing what further administrative remedy was "available" to Plaintiff under the circumstances, and (2) in any event, Plaintiff exhausted his administrative remedies due to the fact that, promptly after he sent his letter of March 17, 2004, complaining of his stay in S.H.U., he was released from S.H.U.  (Dkt. No. 22 at 8-9 [Plf.'s Opp. Mem. of Law].)

## II.    RELEVANT LEGAL STANDARD

A defendant may move to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P.

12(b)(6). To prevail on such a motion, the defendant must show "beyond doubt that the plaintiff

can prove no set of facts in support of his claim [that] would entitle him to relief." *Conley v.

Gibson*, 355 U.S. 41, 45-46 (1957) (citations omitted).[35] A defendant may base this motion on

either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Rule

8(a)(2);[36] or (2) a challenge to the legal cognizability of the claim.[37]

---

[35]     *See also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.") (internal quotations and citation omitted).

[36]     *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") (citations omitted); *Princeton Indus., Inc. v. Rem*, 39 B.R. 140, 143 (Bankr. S.D.N.Y. 1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972) ("This motion under Fed. R. Civ. P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed. R. Civ. P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.'").

[37]     *See Swierkiewicz*, 534 U.S. at 514 ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest. . . .   In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation . . . fails as a matter of law.") (citation omitted); *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F. Supp.2d 348, 370 (S.D.N.Y. 2005) ("Although Rule 8 does not require plaintiffs to

Rule 8(a)(2) requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although Rule 8(a)(2) does not require a pleading to state the elements of a prima facie case,[38] it does require the pleading to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Dura Pharm., Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) (quoting *Conley*, 355 U.S. at 47).[39] The purpose of this rule is to "facilitate a proper decision on the merits." *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (quoting *Conley*, 355 U.S. at 48). A complaint that fails to comply with this rule "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims." *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, C.J.), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table opinion).[40]

---

plead a theory of causation, it does not protect a legally insufficient claim.") (citation omitted); *Util. Metal Research & Generac Power Sys.*, 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a]); *accord*, *Straker v. Metro Trans. Auth.*, 331 F. Supp.2d 91, 101-102 (E.D.N.Y. 2004); *Tangorre v. Mako's, Inc.*, 01 Civ. 4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion--one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

[38]    *See Swierkiewicz*, 534 U.S. at 511-512, 515.

[39]    *See also Swierkiewicz*, 534 U.S. at 512 (quoting *Conley*, 355 U.S. at 47); *Leathernman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) (quoting *Conley*, 355 U.S. at 47).

[40]    Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See*, *e.g.*, *Photopaint Technol., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003) (citing, for similar purpose, unpublished

The Supreme Court has characterized this pleading requirement under Rule 8(a)(2) as "simplified" and "liberal," and has rejected judicially established pleading requirements that exceed this liberal requirement. *See Swierkiewicz*, 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake."). However, even this liberal notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003); *see*, *e.g.*, *Dura Pharm.*, 125 S. Ct. at 1634-1635 (pleading did not meet Rule 8[a][2]'s liberal requirement); *accord*, *Christopher v. Harbury*, 536 U.S. 403, 416-422 (2002), *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234-235 (2d Cir. 2004), *Gmurzynska v. Hutton*, 355 F.3d 206, 208-209 (2d Cir. 2004).[41]

---

table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 [2d Cir. 1996]); *U.S. v. Casado*, 303 F.3d 440, 449 n.5 (2d Cir. 2002) (citing, for similar purpose, unpublished table opinion of *U.S. v. Terry*, 927 F.2d 593 [2d Cir. 1991]); *Medforms, Inc. v. Healthcare Mgmt. Solutions, Inc.*, 290 F.3d 98, 114 (2d Cir. 2002) (citing, for similar purpose, unpublished table opinion of *Zitz v. Pereira*, 225 F.3d 646 [2d Cir. 2000]); *John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48, 57 (2d Cir. 2001) (citing, for similar purpose, unpublished table opinion of *Herman Miller, Inc. v. Worth Capitol*, 173 F.3d 844 [2d Cir. 1999]); *Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 226 (2d Cir. 2000) (citing, for similar purpose, unpublished table opinion of *St. Charles Cable TV, Inc. v. Eagle Comtronics, Inc.*, 895 F.2d 1410 [2d Cir. 1989]); *Name.Space, Inc. v. Network Solutions, Inc.*, 202 F.3d 573, 586 (2d Cir. 2000) (citing, for similar purpose, unpublished table opinion of *Planned Parenthood Fed'n of Am. v. Bucci*, 152 F.3d 920 [2d Cir. 1998]).

[41]     Several other decisions exist from the Second Circuit affirming the Rule 12(b)(6) dismissal of a complaint due to its insufficiency under Rule 8(a)(2) after *Swierkiewicz*. *See*, *e.g.*, *Johnson v. U.S.*, No. 03-6054, 2003 WL 22849896, at *1 (2d Cir. Dec. 2, 2003) (relying on pre-*Swierkiewicz* decision by the Second Circuit applying Rule 8[a] and Rule 12[b][6]); *Salvador v. Adirondack Park Agency of the State of N.Y.*, No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2]).  Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, I cite them because they clearly acknowledge the continued precedential effect, after *Swierkiewicz*, of cases from within the Second Circuit interpreting Rules 12(b)(6) and 8(a)(2). *See Khan v. Ashcroft*, 352 F.3d 521, 525

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (affirming grant of motion to dismiss) (citation omitted). "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se*." *Hernandez*, 18 F.3d at 136 (citation omitted).[42] Indeed, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) (internal quotation and citation omitted).[43]

Finally, when addressing a *pro se* complaint, a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted).[44] Of course, an opportunity to replead should be denied where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading

---

(2d Cir. 2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS*, 244 F.3d 81 [2d Cir. 2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr*, 533 U.S. 289 [2001]).

[42]    *See also Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999) (affirming dismissal under Rule 12[b][6]) (internal quotations and citation omitted).

[43]    Of course, the liberal standard accorded to *pro se* pleadings "is not without limits, and all normal rules of pleading are not absolutely suspended." *Stinson v. Sheriff's Dep't of Sullivan Cty.*, 499 F. Supp. 259, 262 & n.9 (S.D.N.Y. 1980) (citations omitted), *accord*, *Gil v. Vogilano*, 131 F. Supp.2d 486, 491 (S.D.N.Y. 2001).

[44]    *See also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

14

will not cure it." *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) (citation omitted); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) (citation omitted).  Finally, granting a *pro se* plaintiff an opportunity to amend his complaint is not required where the plaintiff has already been given an opportunity to amend his complaint (and has taken advantage of that opportunity).

### III.    ANALYSIS

#### A.    Whether Plaintiff's Claims Against Defendant Goord Should Be Dismissed Due to Plaintiff's Failure to Allege Facts Indicating that Defendant Goord Was Personally Involved in the Constitutional Violations Alleged

A defendant's personal involvement in alleged unlawful conduct is a prerequisite for a finding of liability in a Section 1983 action.  *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987). Supervisory officials such as prison superintendents are personally involved in a constitutional violation only if: (1) they directly participated in that violation; (2) they failed to remedy that violation after learning of it through a report or appeal; (3) they created, or allowed to continue, a policy or custom under which the violation occurred; (4) they were grossly negligent in managing subordinates who caused the violation; or (5) they exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring.  *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (adding fifth prong); *Wright v. Smith*. 21 F.3d 496, 501 (2d Cir. 1994) (adding fifth prong); *Williams v. Smith*, 781 F.2d 319, 323-324 (2d Cir. 1986) (setting forth four prongs).

Here, the forms of personal involvement by Defendant Goord that Plaintiff alleges are the

15

third and fourth forms of personal involvement described above–i.e., that Defendant Goord

created or allowed to continue, a policy or custom under which the violation occurred, and that

Defendant Goord was grossly negligent in managing subordinates who caused the violation.

(Dkt. No. 22 at 7 [Plf.'s Opp. Mem. of Law].)  Specifically, Plaintiff asserts, in pertinent part, as

follows:

> Commissioner Goord has in place [a] rule that prisoners who are 'in-transit' cannot have documents on them–not even their I.D. cards[.] . . . [H]e authorizes 'permits' to be carried on the persons of specified prisoners . . . [but he does] not allow[] . . . [the carrying of such permits] when they are in-transit, setting the stage for the prisoners['] [rights] to be violated by his subordinates, by not properly training them, etc., to ascertain by other means–whether an in-transit prisoner has permits . . . .

(*Id.*)

For the sake of argument, I will set aside the obvious vagueness and conclusory nature of

Plaintiff's allegations of personal involvement.  For example, how does Plaintiff know there is a

DOCS "rule?"  Is it simply because of his experience as a DOCS inmate (which was relatively

brief when he filed his Amended Complaint in April of 2005)?  And how does Plaintiff know

that it was Defendant Goord who put that rule "in place"?  Is it simply because of Defendant

Goord's position as DOCS Commissioner?

Rather, the main problem with Plaintiff's allegations is not formal but substantive.

Taking the first form of personal involvement that Plaintiff alleges (i.e., that Defendant Goord

created or allowed to continue, a policy or custom under which the violation occurred), even

assuming that Plaintiff has sufficiently alleged that Defendant Goord "created" or "allowed to

continue" the "rule" to which Plaintiff refers, what allegation is there that it was this rule that

16

*caused* the (alleged) violations to occur?  Rather, was it not the (alleged) actions of Defendants Hodes, O'Keefe, and Craft that caused the (alleged) violations to occur?  Plaintiff himself acknowledges this fact when he alleges that Defendants Hodes and O'Keefe each stated to him that, even if Plaintiff had been carrying the written permit at the time, they would have put him in the Ulster C.F. S.H.U. until Plaintiff cut his beard.[45]

Turning to the second form of personal involvement that Plaintiff alleges (i.e., that Defendant Goord was grossly negligent in managing subordinates who caused the violation), what factual allegations are there indicating that Defendant Goord's (alleged) improper training or management of his subordinates rose to the level of "gross negligence"?  For example, nowhere is there an allegation that Defendant Goord knew of this sort of (alleged) constitutional violation occurring before with dire consequences to a prisoner, or even that such a violation had in fact ever occurred before.[46]  And nowhere is there an allegation that Defendant Goord had reason to know that the consequences of such a violation would be so dire to a prisoner that those consequences would elevate Defendant Goord's inaction from simple negligence to *gross* negligence.  Rather, again, Plaintiff is attempting to personally involve Defendant Goord in the constitutional violations alleged simply due to his position as DOCS Commissioner.  Under such a theory of liability, a DOCS Commissioner would be "personally involved" in virtually every act of misconduct by one of his subordinates.  This is not the law.

---

[45]        (Dkt. No. 9, ¶ 7(a), (b) [Plf.'s Am. Compl.].)

[46]        Indeed, Plaintiff acknowledges that the previous time he was instructed to shave his beard while in transit between prisons he was subsequently permitted to keep his beard after a telephone call verified the existence of the permit.  (Dkt. No. 9, ¶ 7(a) [Plf.'s Am. Compl.].) Furthermore, conspicuously absent from Plaintiff's Amended Complaint is an allegation that he wrote Defendant Goord about that incident.

As a result, I recommend that the Court dismiss Plaintiff's claims against Defendant

Goord due to his lack of personal involvement in the alleged constitutional deprivations.

**B.      Whether Plaintiff's Claims Against All Defendants Should Be Dismissed
          Because of His Failure to Exhaust His Available Administrative Remedies**

The Prison Litigation Reform Act of 1995 ("PLRA") requires that prisoners who bring

suit in federal court must first exhaust their available administrative remedies: "No action shall

be brought with respect to prison conditions under §1983 . . . by a prisoner confined in any jail,

prison, or other correctional facility until such administrative remedies as are available are

exhausted."  42 U.S.C. § 1997e.  The Department of Correctional Services ("DOCS") has

available a well-established three-step grievance program:

> First, an inmate is to file a complaint with the Grievance Clerk.  An
> inmate grievance resolution committee ("IGRC") representative has
> seven working days to informally resolve the issue.  If there is no
> resolution, then the full IGRC conducts a hearing and documents the
> decision.  Second, a grievant may appeal the IGRC decision to the
> superintendent, whose decision is documented.  Third, a grievant may
> appeal to the central office review committee ("CORC"), which must
> render a decision within twenty working days of receiving the appeal,
> and this decision is documented.

*White v. The State of New York*, 00-CV-3434, 2002 U.S. Dist. LEXIS 18791, at *6 (S.D.N.Y. Oct

3, 2002) (citing N.Y. Comp. Codes R. & Regs. Tit. 7, § 701.7).  DOCS also has a separate and

distinct administrative appeal process for inmate misbehavior hearings:

A.      For Tier III superintendent hearings, the appeal is to the Commissioner's designee,

Donald Selsky, D.O.C.S. Director of Special Housing/Inmate Disciplinary

Program, pursuant to 8 N.Y.C.R.R. § 254.8;

18

B.    For Tier II disciplinary hearings, the appeal is to the facility Superintendent

pursuant to 7 N.Y.C.R.R. § 253.8; and

C.    For Tier I violation hearings, the appeal is to the facility Superintendent or a

designee pursuant to 7 N.Y.C.R.R. § 252.6.

Individual decisions or dispositions regarding inmate misbehavior reports and hearings, or

inmate grievances, are not considered grievable matters; however, the policies, rules and

procedures of the disciplinary and grievance programs may be the subject of a grievance.  *See* 7

N.Y.C.R.R. § 701.3(e)(1), (2); *see also* N.Y. Dep't Corr. Serv. Directive No. 4040 at III.E.

Generally, if a prisoner has failed to follow each of these steps prior to commencing litigation, he

has failed to exhaust his administrative remedies.  *Rodriguez v. Hahn*, 209 F. Supp. 2d 344, 347-

48 (S.D.N.Y. 2002); *Reyes v. Punzal*, 206 F. Supp. 2d 431, 433 (W.D.N.Y. 2002).

### 1.    Three-Part Inquiry Regarding Exhaustion

The Second Circuit has recently held that a three-part inquiry is appropriate where a

defendant contends that a prisoner has failed to exhaust his available administrative remedies, as

required by the PLRA.  *See Hemphill v. State of New York*, 380 F.3d 680, 686, 691 (2d Cir.

2004).  First, "the court must ask whether [the] administrative remedies [not pursued by the

prisoner] were in fact 'available' to the prisoner."  *Hemphill*, 380 F.3d at 686 (citation omitted).

Second, if those remedies were available, "the court should . . . inquire as to whether [some or all

of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to

raise or preserve it . . . or whether the defendants' own actions inhibiting the [prisoner's]

exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's

failure to exhaust as a defense."  *Id.* (citations omitted).  Third, if the remedies were available and

19

some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion

defense, "the Court should consider whether 'special circumstances' have been plausibly alleged

that justify the prisoner's failure to comply with the administrative procedural requirements." *Id.*

(citations and internal quotations omitted).

With respect to the first step (i.e., availability of administrative remedies), Plaintiff

argues, in part, that Defendants have failed to meet their burden of showing what further

administrative remedy was *available* to him under the circumstances.  (Dkt. No. 22 at 8-9 [Plf.'s

Opp. Mem. of Law].)  While Plaintiff is perhaps correct that Defendants did not expressly cover

this rather narrow point of law in their Memorandum of Law, I am permitted to take judicial

notice of such points of law, and I do so here.  The answer to Plaintiff's question lies in DOCS

Directive No. 4040, which provides, in pertinent part:

> Filing the complaint.  An inmate must submit a complaint to the clerk
> within fourteen (14) calendar days of an alleged occurrence on an
> Inmate Grievance Complaint Form (Form #2131).   If this form is not
> readily available, a complaint may be submitted on plain paper.
>
> Note: Exceptions to this time limit may be approved by the IGP
> supervisor based on mitigating circumstances (e.g., attempts to resolve
> informally by the inmate, referrals back to the IGP by the courts, etc.).
> An inmate may pursue a complaint that an exception to the time limit
> was denied through the grievance mechanism.

DOCS Directive No. 4040 § V(A)(1) (Aug. 22, 2003), codified at 7 N.Y.C.R.R. § 701.6(g)

(2007) (formerly codified at 7 N.Y.C.R.R. § 701.7[a], which was repealed and amended on June

28, 2006).

Simply stated (assuming Plaintiff did not somehow exhaust his administrative remedies

in another way), Plaintiff could have, and should have, filed a new grievance complaining about

the rejection of his April 13, 2004, grievance due to untimeliness.  To the extent that Plaintiff

argues that his May 23, 2004, letter to the Ulster C.F. IGP Supervisor constituted such a

grievance, (1) that letter was (yet again) not filed within the permitted 14-day time period, and

(2) in any event, Plaintiff should have *appealed* the Ulster C.F. IGP Supervisor's denial of (or

lack of a response to) that May 23, 2004, letter.  *See, e.g.*, *Petit v. Bender*, 99-CV-0969, 2003 WL

22743485, at *5 (S.D.N.Y. Nov. 19, 2003) (dismissing prisoner civil rights action in part because

of failure to exhaust administrative remedies due to failure to file appeal to CORC from IGP

supervisor's denial of prisoner's request to file appeal based on untimeliness).[47]

        With respect to the second step (i.e., whether Defendants are estopped from asserting this

defense), I find no factual allegations indicating that any Defendant is estopped from raising this

defense because of any actions inhibiting Plaintiff's exhaustion of remedies.  (Dkt. Nos. 6, 22.)

For example, it was not one of the Defendants in this action but a DOCS employee identified as

"D. Taylor" who rejected Plaintiff's complaint letter dated April 13, 2004.[48]

        With respect to the third step (i.e., whether special circumstances exist justifying a failure

---

        [47]        Similarly, prisoners are required to appeal a dismissal or rejection of a grievance
where prison officials have erroneously dismissed or rejected that grievance on the ground that
the matters raised therein are not grievable.  *See, e.g.*, *Ciaprazi v. Pataki*, 99-CV-0379, Report-
Recommendation, at 50-51 (N.D.N.Y. filed March 17, 2006) (Lowe, M.J.), *adopted by* Order
(N.D.N.Y. filed June 5, 2006) (Mordue, C.J.) (affirming this point of law, upon *de novo* review,
after Plaintiff contested the point of law, among other things, on page 56 of his Objection, filed
June 5, 2006); *Pettus v. Richards*, 04-CV-0260, 2005 WL 928629, at *3 (N.D.N.Y. March 28,
2005) (Mordue, J.) ("[Plaintiff] cannot reasonably claim that the I.G.R.C. and/or superintendent's
rulings [dismissing plaintiff's grievance on the ground that the matters described therein are not
grievable] prevented him from [grieving his Eighth Amendment claim] inasmuch as the rulings
were made in *response* to his grievance.").

        [48]        (Dkt. No. 9, Ex. 3 [Plf.'s Am. Compl., attaching letter from Ulster C.F. Inmate
Grievance Supervisor "D. Taylor" dated 4/21/04].)

to exhaust), I find no factual allegations indicating that "special circumstances" exist justifying

Plaintiff's failure to exhaust his available administrative remedies.  (Dkt. Nos. 6, 22.)  In

reaching this conclusion, I recognize that, in 2006, the Second Circuit held that a prisoner's

failure to seek an exception to the 14-day time limit for filing grievances constituted a special

circumstance excusing exhaustion.  *Brownell v. Krom*, 446 F.3d 305, 313 (2d. Cir. 2006).

However, the Second Circuit reached this conclusion only because "[t]he grievance form used by

the prison facility does not advise inmates of the 'mitigating circumstances' exception [to the

fourteen-day filing deadline]; nor are we advised of any other means whereby prisoners

may–upon discovering material facts that may change the nature of their complaint–file a

separate new grievance or seek to amend an existing one."  *Brownell*, 446 F.3d at 313.   Here,

Plaintiff was clearly given notice of his ability to grieve the rejection of his grievance when he

was sent DOCS Directive 4040, which was attached to the April 21, 2004, letter from the Inmate

Grievance Supervisor at Upstate C.F.[49]  That Directive clearly explained that "[e]xceptions to

[the] [14-day] time limit may be approved by the IGP supervisor based on mitigating

circumstances . . . .  An inmate may pursue a complaint that an exception to the time limit was

denied through the grievance mechanism."[50]  Plaintiff simply chose to ignore that Directive.

---

[49]      (Dkt. No. 9, Ex. 3 [Plf.'s Am. Compl., attaching letter from Ulster C.F. Inmate Grievance Supervisor dated 4/21/04].)

[50]      DOCS Directive No. 4040 § V(A)(1) (Aug. 22, 2003), codified at 7 N.Y.C.R.R. § 701.6(g) (2007) (formerly codified at 7 N.Y.C.R.R. § 701.7[a], which was repealed and amended on June 28, 2006).

## 2.    Possibility of Exhaustion Through Informal Channels

However, this does not end our analysis because Plaintiff also argues that he exhausted his administrative remedies due to the fact that, promptly after he sent his letter of March 17, 2004, complaining of his stay in S.H.U., he was released from S.H.U.  (Dkt. No. 22 at 8-9 [Plf.'s Opp. Mem. of Law].)  In other words, Plaintiff is claiming that he exhausted his administrative remedies informally, as prisoners are permitted to do under the law in the Second Circuit.[51]  The rationale for this rule is that obtaining a favorable determination regarding a claim renders unnecessary the further pursuit of the claim.[52]

Given the factual allegations of Plaintiff's Amended Complaint, I am extremely skeptical of Plaintiff's informal-exhaustion claim.  Despite attaching numerous documents to his Amended Complaint, Plaintiff does not attach a copy of his alleged letter of March 17, 2004.  Nor does he clearly articulate what that letter specifically said, despite being given an opportunity to file an Amended Complaint and an extension of time in which to file his response to Defendants' motion to dismiss.[53]  Rather, he presents a series of piecemeal allegations about the subject or

---

[51]    *See Hemphill v. New York*, 380 F.3d 680, 682 n.4 (2d Cir. 2004) ("[A]n inmate who obtains a favorable resolution of his complaint through informal processes has exhausted available administrative remedies under the DOCS scheme."); *Ortiz v. McBride*, 323 F.3d 191, 194 (2d Cir. 2003) ("[U]nder the administrative scheme applicable to New York's prisoners, resolution of an inmate's grievances through informal channels may satisfy the exhaustion requirement."), *Marvin v. Goord*, 255 F.3d 40, 43 n.3 (2d Cir. 2001) (suggesting that prisoner had satisfied exhaustion requirement by overturning a prohibition on correspondence with his attorney through informal channels); 7 N.Y.C.R.R. 701.1(b) ("[The inmate grievance program] is intended to supplement, not replace, existing formal or informal channels of problem resolution . . . .").

[52]    *See Ortiz v. McBride*, 380 F.3d 649, 653-654 (2d Cir. 2004) [citations omitted]

[53]    (Dkt. No. 9, Exs. 4, 6 [Plf.'s Am. Compl., attaching letter from Plaintiff dated 5/23/04 and letter from Plaintiff dated 6/16/04]; Dkt. No. 22 at 3, 8 [Plf.'s Opp. Mem. of Law;

purpose of the letter.

Specifically, in Exhibit 4 to his Amended Complaint, he alleges that the letter sought "redress of the harsh conditions . . . I was subjected to regarding my spiritual practices."[54]  In Exhibit 6 to his Amended Complaint, he alleges that the letter's purpose was to persuade the hearing officer "to review my placement in the SHU or [to give me] a hearing."[55]  On page 3 of his Memorandum of Law in opposition to Defendants' motion, Plaintiff alleges that the letter "complain[ed] about his subjugation to SHU treatment and confinement because of his beard–in light of the fact that he possesses a 'permit' authorizing him to have his beard."[56]  On page 8 of his Memorandum of Law, Plaintiff alleges that the letter sought "redress . . . [for his being] subjected to the S.H.U. for his over one inch beard."[57]

But the failure to provide a copy of Plaintiff's March 17, 2004, letter, and the lack of factual specificity regarding it, are not the only problems with Plaintiff's reliance on that letter to satisfy the PLRA's exhaustion requirement.  Plaintiff does not allege precisely *when* he sent the

---

*see also* Dkt. No. 20 [Order of 4/18/06 granting Plaintiff's extension request].)

[54]     (Dkt. No. 9, Ex. 4 [Plf.'s Am. Compl., attaching letter from Plaintiff dated 5/23/04].)  While I acknowledge that the referenced statement raises the specter of a First Amendment claim, I note the statement is ambiguous.  Does the statement mean that the letter complained that he was subjected to the harsh conditions as a result of his having practiced his religion, or does the statement mean that the letter complained that the harsh conditions in S.H.U. inhibited Plaintiff from practicing his religion (which is not a claim in this action)?

[55]     (Dkt. No. 9, Ex. 6 [Plf.'s Am. Compl., attaching letter from Plaintiff dated 6/16/04].)

[56]     (Dkt. No. 22 at 3 [Plf.'s Opp. Mem. of Law].)

[57]     (Dkt. No. 22 at 8 [Plf.'s Opp. Mem. of Law].)

letter, and precisely *when* he was released from SHU.[58]  Making the rather safe assumption that a decision to release an inmate from SHU is not made instantaneously and requires decisions at multiple levels of the chain of command in a prison, it would be difficult for a rational fact-finder to conclude that an inmate's release from SHU was *caused* by the inmate's simple act of handing a letter to a correctional officer for delivery *immediately* before that release.[59]

Moreover, Plaintiff acknowledges in his Amended Complaint that he did not send his letter of March 17, 2004, to a specific person.  Rather, he sent his letter to "the hearing officer" (or perhaps to an unspecified lieutenant).[60]  What hearing officer?  Plaintiff acknowledges that no hearing had yet been held.[61]  And which lieutenant?  Again, making the safe assumption that Ulster C.F., like the rest of the correctional facilities within the New York State DOCS, employs

---

[58]     (Dkt. No. 9, Ex. 6 [Plf.'s Am. Compl., attaching letter from Plaintiff dated 6/16/04, stating, *inter alia*, "I wrote the 'hearing officer' . . . thereupon I was put on the draft and transported to WCF"]; Dkt. No. 22 at 3 [Plf.'s Opp. Mem. of Law, alleging, *inter alia*, "[P]laintiff-prisoner wrote a letter to the 'Hearing Officer / Lieutenant' . . . .  Subsequently, plaintiff was released from SHU treatment and confinement"]; Dkt. No. 22 at 8 [Plf.'s Opp. Mem. of Law, alleging, *inter alia*, "Plaintiff . . . wrote a letter . . . to the 'Hearing Officer / Lieutenant' . . . subsequently, plaintiff was released speedily . . . ."].)

[59]     (Dkt. No. 22 at 8 [Plf.'s Opp. Mem. of Law, alleging, *inter alia*, "Plaintiff . . . wrote a letter . . . to the 'Hearing Officer / Lieutenant' . . . subsequently, plaintiff was released *speedily* . . . ."] [emphasis added].)

[60]     (Dkt. No. 9, Exs. 4, 6 [Plf.'s Am. Compl., attaching letter from Plaintiff dated 5/23/04 alleging that he sent the 4/17/04 letter to "the hearing officer (Lt./etc.)" and letter from Plaintiff dated 6/16/04 alleging that he sent the 4/17/04 letter to "the 'hearing officer'"]; Dkt. No. 22 at 3, 8 [Plf.'s Opp. Mem. of Law, alleging that he sent the letter to the "Hearing Officer / Lieutenant"].)

[61]     (Dkt. No. 9, Ex. 4 [Plf.'s Am. Compl., attaching letter from Plaintiff dated 5/23/04 alleging that he sent the 4/17/04 letter "prior to a hearing"]; Dkt. No. 22 at 3 [Plf.'s Opp. Mem. of Law, alleging that he sent the letter before he had seen any "action or redress from the authorities"].)

several correctional lieutenants, it would be difficult for a rational fact-finder to conclude that

such a letter was in fact delivered to whatever person was responsible for making the decision to

release Plaintiff from S.H.U. (or that the letter was even read by anyone at all).

Finally, Plaintiff acknowledges in his Amended Complaint that he *never received a*

*response* to his letter of March 17, 2001.[62]  If this were so, then how could the letter have

functioned to informally exhaust his administrative remedies?  Similarly, Plaintiff acknowledges

in his Amended Complaint that, after his release from S.H.U., he subsequently initiated the

grievance procedure, during which he requested (1) "corrective action(s) [by the Inmate

Grievance Committee] to prevent this type of thing from happening to me or to any other

prisoner in the future,"[63] or (2) the conducting of a "hearing . . . regarding this issue."[64]  If he

considered his grievance to be informally resolved upon his release from S.H.U. on March 17,

2004, then why would he file grievances requesting these forms of relief?

Having said all of that, I acknowledge that the vast majority of the aforementioned

problems with Plaintiff's informal-exhaustion claim must be excused or overlooked due to the

"simplified" and "liberal" pleading standard established by Rule 8 of the Federal Rules of Civil

---

[62]     (Dkt. No. 9, Exs. 4, 6 [Plf.'s Am. Compl., attaching letter from Plaintiff dated 5/23/04 stating *inter alia* "I have yet to have . . . a response from the hearing officer regarding this issue," and letter from Plaintiff dated 6/16/04 stating *inter alia* "I have never gotten a response from the hearing officer"].)

[63]     (Dkt. No. 9, Ex. 2 [Plf.'s Am. Compl., attaching letter from Plaintiff dated 4/13/04]; *see also* Dkt. No. 9, Ex. 5 [Plf.'s Am. Compl., attaching grievance from Plaintiff dated 6/1/04, stating, "I am hereby trying to see[k] redress, and a prevention of these acts, etc."].)

[64]     (Dkt. No. 9, Ex. 4 [Plf.'s Am. Compl., attaching letter from Plaintiff dated 5/23/04]; *see also* Dkt. No. 9, Ex. 6 [Plf.'s Am. Compl., attaching letter from Plaintiff dated 6/16/04, requesting a "desposition [sic] [from a hearing officer] of the reasons for my placement in your SHU"].)

26

Procedure,[65] and Plaintiff's special status as a *pro se* civil rights litigant.[66]  The remainder of the questions raised by Plaintiff's allegations are more properly addressed on a motion for summary judgment; Plaintiff is advised, however, that his claim of informal exhaustion might not survive such a motion, if no further evidence is adduced in support of it.[67]

      For all of these reasons, I recommend that, at this time, the Court *not* dismiss Plaintiff's claims against all Defendants due to a failure to exhaust his available administrative remedies.

### C. Whether Plaintiff's Fourteenth Amendment Claim Against All Defendants Should Be Dismissed *Sua Sponte* for Failure to State a Claim

      In 1995, the Supreme Court held in *Sandlin v. Connor* that liberty interests protected by the Fourteenth Amendment's Due Process Clause "will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandlin v. Connor*, 515 U.S. 472, 483-484 (1995).

---

[65]    *See*, *e.g.*, *Swierkiewicz*, 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake."); *Phillips*, 408 F.3d at 127-130.

[66]    *See*, *e.g.*, *Hernandez*, 18 F.3d at 136 ("This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se*.").  [citation omitted]; *Phillips*, 408 F.3d at 127-128.

[67]    *See*, *e.g.*, *Tackman v. Goord*, 99-CV-0438, 2005 U.S. Dist. LEXIS 42654, at *74-75 (W.D.N.Y. Sept. 26, 2005) (granting defendants' motion for summary judgment after rejecting prisoner's argument that he informally exhausted his administrative remedies by writing letters to various prison officials, since none of those letters mentioned the due process issues raised in the federal court action); *Dye v. Virts*, 03-CV-6273, 2004 U.S. Dist. LEXIS 20583, at *21 (W.D.N.Y. Sept. 28, 2004) (granting defendants' motion for summary judgment after rejecting plaintiff's last-minute claim that he "did file grievances of abuse" but that he "suspect[s] [they] were trashed in [an] attempt[] to silence" him, since the claim is entirely conclusory" and it "does not state when, where, or with whom he allegedly filed these grievances"); *see also Ruggiero v. County of Orange*, 467 F.3d 170, 177-178 (2d Cir. 2006) ("*Marvin* [*v. Goord*, 255 F.3d 40 (2d Cir. 2001)] does not imply that a prisoner has exhausted his administrative remedies every time he receives his desired relief through informal channels.").

Here, Plaintiff alleges that, while he was confined in the Ulster C.F. S.H.U., he was subjected to the following restrictive conditions: a strip search, continuous confinement in his cell, continuous isolation from the general prison population, continuous denial of use of prison facilities (such as the libraries, gym, etc.), and sleep deprivation due to the 24-hour lighting in his cell and the loud noise of the air-conditioning system above his cell.[68]  Conspicuously missing from Plaintiff's detailed Amended Complaint are any allegations that, while confined in S.H.U., he was denied food, clothing, bedding, heat, running water, showers, toiletries, medicine, visitors, books, etc.  In addition, Plaintiff acknowledges that he eventually served only *six days* in S.H.U.[69]

Simply stated, I find that Plaintiff has not alleged facts indicating that he possessed a liberty interest that was protected by the Fourteenth Amendment.  As a result, I conclude that Plaintiff's Fourteenth Amendment claim against all Defendants should be dismissed *sua sponte* for failure to state a claim upon which relief may be granted, under 28 U.S.C. § 1915(e)(2)(B)(ii) and Rule 12(h)(3) of the Federal Rules of Civil Procedure.

---

[68]    (Dkt. No. 9, ¶ 5 & Exs. 2, 4 [Plf.'s Am. Compl., attaching complaint letter from Plaintiff dated 4/13/04, and a letter from Plaintiff dated 5/23/04]; *see also* Dkt. No. 22 at 3 [Plf.'s Opp. Mem. of Law, asserting the allegation regarding being strip searched].)

[69]    (*Id*.)

**D.     Whether Plaintiff's Eighth Amendment Claim Against All Defendants Should Be Dismissed *Sua Sponte* for Failure to State a Claim**

Generally, to prevail on such a claim under the Eighth Amendment, Plaintiff must show two things: (1) that the conditions of his confinement resulted in deprivation that was *sufficiently serious*; and (2) that Defendant acted with *deliberate indifference* to Plaintiff's health or safety.[70]

With regard to the first element, "the plaintiff must demonstrate that the conditions of his confinement resulted in 'unquestioned and serious deprivations of basic human needs' or 'deprive inmates of the minimal civilized measures of life's necessities.'"[71]  "As recognized by the Supreme Court . . ., 'the Constitution does not mandate comfortable prisons,' . . . and conditions that are 'restrictive and even harsh . . . are part of the penalty that criminal offenders pay for their offenses against society.'"[72]  Specifically, a prisoner must prove that he has been deprived of a "single, identifiable human need such as food, warmth, or exercise."[73]  If, however, the condition is not sufficiently prolonged or severe, it does not rise to the level of an Eighth Amendment violation.[74]

With regard to the second element, "[i]n prison-conditions cases [the requisite] state of

---

[70]     *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Davidson v. Murray*, 371 F. Supp.2d 361, 370 (W.D.N.Y. 2005).

[71]     *Davidson*, 371 F. Supp.2d at 370 (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 [1981]).

[72]     *Davidson*, 371 F. Supp.2d at 370 (quoting *Rhodes*, 452 U.S. at 347, 349).

[73]     *Wilson v. Seiter*, 501 U.S. 294, 304 (1991).

[74]     *Trammel v. Keane*, 338 F.3d 155, 164-65 (2d. Cir. 2003).

mind is one of deliberate indifference to inmate health or safety . . . ."[75]  "[D]eliberate indifference describes a state of mind more blameworthy than negligence."[76]  "Deliberate indifference" exists if an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[77]  In other words, "this standard requires that only the deliberate infliction of punishment, and not an ordinary lack of due care for prisoner interests or safety, lead to liability."[78]

Here, as explained above, conspicuously missing from Plaintiff's detailed Amended Complaint are any allegations that, while confined in S.H.U., he was denied food, clothing, bedding, heat, running water, showers, toiletries, medicine, visitors, books, etc.[79]  In addition, Plaintiff acknowledges that he eventually served only *six days* in S.H.U.[80]  Based on a liberal construction of Plaintiff's Amended Complaint, I conclude that, as a matter of law, Plaintiff has failed to allege conditions of confinement indicating a deprivation that was *sufficiently serious*

---

[75]     *Farmer*, 511 U.S. at 834.

[76]     *Id*. at 835.

[77]     *Id*. at 837.

[78]     *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 1999) (citing *Farmer*, 511 U.S. at 841).

[79]     (*See* Dkt. No. 9, ¶ 5 & Exs. 2, 4 [Plf.'s Am. Compl., attaching complaint letter from Plaintiff dated 4/13/04, and a letter from Plaintiff dated 5/23/04]; *see also* Dkt. No. 22 at 3 [Plf.'s Opp. Mem. of Law, asserting the allegation regarding being strip searched].)

[80]     (*Id*.)

for purposes of the Eighth Amendment.[81]

As a result, I conclude that Plaintiff's Eighth Amendment claim against all Defendants should be dismissed *sua sponte* for failure to state a claim upon which relief may be granted, under 28 U.S.C. § 1915(e)(2)(B)(ii) and Rule 12(h)(3) of the Federal Rules of Civil Procedure.

**E.     Whether Plaintiff's First Amendment Claim Should Be Dismissed *Sua Sponte*
         for Failure to State a Claim**

The crux of Plaintiff's Amended Complaint is that Defendants violated Plaintiff's First Amendment right to practice his religion by punishing Plaintiff for violating DOCS' one-inch beard rule, while knowing (or recklessly failing to discover) that Plaintiff had, on file with DOCS, an exemption from its beard rule due to the fact that he was a practicing Rastafarian.[82]

I am somewhat troubled by this claim, because (1) Plaintiff alleges that Defendants Hodes and O'Keefe based their conduct on their assertion that any exemption on file with DOCS "does not matter" or "holds no weight,"[83] and (2) at the time in question, the law on the issue (e.g., regarding whether such an exemption was indeed effective or whether a court order was

---

[81]     *See Scot v. Merola*, 555 F. Supp. 230, 231-234 (S.D.N.Y. 1983) (granting defendants' Rule 12[b][6] motion to dismiss inmate's Eighth Amendment claim based on his incarceration for three-and-a-half months on Rikers Island in housing area without heat where windows were broken, and temperature dropped below fifty degrees); *cf. Trammel*, 338 F.3d at 158-159, 164 (affirming grant of defendants' motion for summary judgment dismissing Eighth Amendment claim based on [1] deprivation of all property except one pair of undershorts and [2] exposure to "bitter cold," because the temperatures to which inmate was exposed were not cold enough, and the period of time in which he was deprived of clothing–seventeen days–was not long enough).

[82]     (Dkt. No. 9, ¶ 7(b) & Ex. 2 [Plf.'s Am. Compl., attaching complaint letter from Plaintiff dated 4/13/04].)

[83]     (Dkt. No. 9, ¶ 7(a) [Plf.'s Am. Compl., alleging that Defendant Hodes stated, "at UCF a permit does not matter"]; Dkt. No. 9, ¶ 7(b) [Plf.'s Am. Compl., alleging that Defendant O'Keefe stated that "at U.C.F. a permit from Albany holds no weight"].)

31

required) had recently changed many times.[84]  As a result, I believe that a credible argument might be made by Defendants that the law on this issue was not clearly established at the time in question, giving rise to a qualified immunity defense.[85]  However, Defendants have not made this argument in their motion papers, and I am unable to reach this conclusion *sua sponte* based on Plaintiff's pleading alone.

As a result, I conclude that Plaintiff's First Amendment claim against all Defendants should *not* be dismissed *sua sponte* for failure to state a claim upon which relief may be granted, under 28 U.S.C. § 1915(e)(2)(B)(ii) and Rule 12(h)(3) of the Federal Rules of Civil Procedure.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion to dismiss (Dkt. No. 19) be **GRANTED IN PART** in that all of Plaintiff's claims against Defendant Goord should be **DISMISSED** based on Plaintiff's failure to allege facts indicating the personal involvement of Defendant Goord in the constitutional violations alleged, and that Defendants' motion be **OTHERWISE DENIED** for the reasons described above in this Report-Recommendation; and it is further

---

[84]     *See Young v. Goord*, 01-CV-0626, 2005 WL 562756, at *2-6 (E.D.N.Y. March 10, 2005) (tracing the "alternat[ing]" law between 1993 and 2001 with regard to whether a DOCS "exemption" or a "court order" was necessary to excuse an inmate from the effects of DOCS' one-inch beard rule), *aff'd*, 192 Fed. App'x 31 (2d Cir. Aug. 2, 2006) (unpublished decision).  Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history.  *See supra* note 40 of this Report-Recommendation.

[85]     *See, e.g.*, *Young*, 2005 WL 562756, at *8-9, 11 (granting motion to dismiss based, in part, on defense of qualified immunity).

**ORDERED** that Plaintiff's Eighth and Fourteenth Amendment claims against all Defendants should be **DISMISSED** *sua sponte* for failure to state a claim upon which relief may be granted, under 28 U.S.C. § 1915(e)(2)(B)(ii) and Rule 12(h)(3) of the Federal Rules of Civil Procedure.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 [2d Cir. 1989]); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: January 30, 2007
      Syracuse, New York

George H. Lowe
United States Magistrate Judge

33